

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2000

# T.R. v. Bd Ed Kingwood Twp

Precedential or Non-Precedential:

Docket 99-5021

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"T.R. v. Bd Ed Kingwood Twp" (2000). *2000 Decisions.* Paper 50.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/50

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 9, 2000

No. 99-5021

T.R.; E.M.R., ON BEHALF OF THEIR MINOR CHILD, N.R.,
        Appellants

v.

KINGWOOD TOWNSHIP BOARD OF EDUCATION,
HUNTERDON CO., NEW JERSEY

On Appeal from the United States District Court
for the District of New Jersey

(No. 97-2129 (MLC))
District Judge: Honorable Mary L. Cooper

Argued: November 18, 1999

Before: ALITO, BARRY, and STAPLETON, Circuit  Judges.

(Opinion Filed: March 9, 2000)

        MICHAELENE LOUGHLIN (Argued)
        Loughlin & Latimer
        131 Main Street, Suite 235
        Hackensack, NJ 07601

        JANET J. STOTLAND
        The Education Law Center
         of Pennsylvania
        Philadelphia, PA

        Counsel for Appellants



        LINDA D. HEADLEY
        CANDICE SANG-JASEY
        New Jersey Protection and
         Advocacy, Inc.
        210 South Broad Street, Third Floor
        Trenton, NJ 08608

        Counsel for Amici Curiae
        in Support of Appellants

        BRIAN J. DUFF, ESQ. (Argued)
        Lamb, Hartung, Kretzer, Reinman

& DePascale
601 Pavonia Avenue
Jersey City, NJ 07306

Counsel for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

Plaintiff N.R., through his parents, T.R. and E.M.R.,
brought this action against the Kingwood Township Board
of Education ("the Board") under the Individuals with
Disabilities Education Act ("IDEA"), 20 U.S.C.SS 1400-91
(1994), requesting reimbursement for private school tuition
and support services. N.R. claims that the Board's proposed
placement failed to provide him with a meaningful
educational benefit in the least restrictive environment, as
required by the IDEA. The District Court granted summary
judgment in favor of the Board.

We affirm the District Court's holding that the Kingwood
placement provided N.R. with a sufficient educational
benefit to constitute a "free and appropriate public
education." However, we vacate the court's holding that the
Kingwood placement constituted the least restrictive
environment, and we remand for a determination of
whether the Board failed to consider any appropriate, state-
qualified alternate placements within a reasonable distance
of N.R's residence.

2

I.

N.R. was born on September 7, 1991, and was classified
as preschool handicapped in 1994. During the summer of
1996, N.R.'s parents met with Board officials to discuss an
Individualized Education Program ("IEP") for N.R. for the
1996-97 school year. The Board's child study team
determined that N.R. had the skills to begin kindergarten in
the fall of 1996 and recommended his placement in the
Kingwood School's regular kindergarten program. On
August 2, 1996, however, T.R. and E.M.R. rejected this
proposed placement, stating that they planned to send N.R.
to preschool for another year.1

At that time, Kingwood Township did not offer a regular
preschool program for non-disabled children. Rather, the
Township offered a single, half-day preschool class
composed of half disabled children and half non-disabled
children. The Board drafted a new IEP which provided for
N.R.'s placement in this class, with afternoon placement in

the school's resource room. N.R.'s parents rejected this proposal and informed the Board that they planned to have N.R. spend the next year at the Rainbow Rascals Learning Center ("Rainbow Rascals"), a private daycare center that N.R. had attended the previous year. At the time, Rainbow Rascals was not accredited as a preschool by the State of New Jersey or by any independent educational accreditation agency. Nevertheless, T.R. and E.M.R. requested that the Board pay for N.R.'s tuition at Rainbow Rascals and provide supplemental special education services there.

The Board filed for due process, seeking a determination that its 1996-97 IEP provided N.R. with a free appropriate public education in the least restrictive environment as required by the IDEA. The Administrative Law Judge found that Kingwood Township's kindergarten program satisfied the IDEA's requirements and that the Board should not be liable for the parents' decision to keep N.R. at Rainbow Rascals.

_____

1. N.R. would have turned five the week that school began, and New Jersey law does not require a parent to enroll a child in kindergarten until the child has reached the age of six.

In April 1997, N.R.'s parents filed suit on his behalf in District Court. They alleged, inter alia, that the ALJ had erred in finding that the Board's proposed IEPs had offered N.R. a free appropriate public education in the least restrictive environment. The parties filed cross-motions for summary judgment, and the District Court granted summary judgment in favor of the Board. The District Court found that the 1996-97 IEP (consisting of placement in Kingwood's half-day preschool class and resource room) provided N.R. with a free, appropriate public education by offering more than a trivial education benefit. See T.R. v. Kingwood Township Bd. of Educ., 32 F. Supp. 2d 720, 728-29 (D.N.J. 1998). The court pointed to testimony by the Board's expert witnesses, Dr. Frances Hobbie and Dr. Leslie Callanan, who stated that the Kingwood program would meet N.R.'s educational needs. The court also referenced the testimony of Darlene Johnson, the teacher of the Kingwood preschool class, who stated that she was familiar with N.R.'s IEP and would work to implement it on a daily basis.

In addition, the District Court found that the Kingwood class constituted the least restrictive environment for N.R. under the IDEA. See id. at 730. Finally, the court held that Rainbow Rascals could not be considered as a possible

placement for N.R. because it was not accredited by the state. See id. at 730-31.

N.R. and his parents appeal, seeking reimbursement for N.R.'s tuition at Rainbow Rascals and for his therapy costs for the 1996-97 school year.

We exercise jurisdiction pursuant to 20 U.S.C. S 1415(i)(2). We exercise plenary review of the legal standard applied by the District Court. See Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 181 (3d Cir. 1988). However, we must accept the District Court's findings of fact unless they are clearly erroneous. See Oberti v. Board of Educ. of Borough of Clementon Sch. Dist. , 995 F.2d 1204, 1220 (3d Cir. 1993).

II.

The IDEA requires states receiving federal funding under the Act to have "in effect a policy that ensures all children

4

with disabilities the right to a free appropriate public education." 20 U.S.C. S1412(1). Where a state fails to satisfy this statutory mandate, parents have a right to reimbursement for private school tuition. See Burlington v. Department of Educ. of Commonwealth of Mass., 471 U.S. 359, 370 (1985). Appellants argue that the District Court erred in finding that the Board's 1996-97 IEP provided N.R. with a free appropriate public education because the Court applied an incorrect legal standard and failed to conduct an independent review of the record. We reject this argument. Although it appears that the District Court did apply an incorrect legal standard, it is also apparent that the Board introduced more than sufficient evidence to prove, under the proper standard, that the Kingwood preschool placement provided a free and appropriate education (hereinafter "FAPE") for N.R.

The Supreme Court has construed the statute's FAPE mandate to require "education specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child`to benefit' from the instruction." Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 188-89 (1982). The education provided must "be sufficient to confer some educational benefit upon the handicapped child," id. at 200, although the state is not required to "maximize the potential of handicapped children." Id. at 197 n.21. Prior to the District Court's decision in this case, our Court interpreted Rowley to require that an IEP offer "more than a trivial or de minimis educational benefit." Oberti, 995

F.2d at 1213; see also Polk, 853 F.2d at 179 (IDEA "calls for more than a trivial educational benefit"). Specifically, we said that a satisfactory IEP must provide "significant learning" and confer "meaningful benefit." Polk, 853 F.2d at 182, 184.

The District Court, in apparent reliance on these precedents, focused its review on "whether [N.R.'s] IEP was sufficient to confer an educational, nontrivial benefit on him," and concluded that it was. T.R., 32 F. Supp. 2d at 728. However, in our most recent explication of the FAPE standard, our Court squarely held that "[t]he provision of merely `more than a trivial educational benefit' does not

5

meet" the meaningful benefit requirement of Polk. Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999). By failing to inquire into whether the Board's IEP would confer a meaningful educational benefit on N.R., the District Court applied the incorrect legal standard on this issue.2

Nevertheless, we believe that the evidence on which the District Court relied amply satisfies the somewhat more stringent "meaningful benefit" test. As the District Court noted, both Dr. Callanan and Dr. Hobbie testified to the benefits N.R. would receive from resource-room work in the areas of communication and motor skills. (App. 32, 45.) Dr. Hobbie also noted the educational advantages of the Kingwood preschool program, including small class size, a full-time aide, and the presence of supplemental staff and a child study team on premises. (App. 38-39.) Darlene Johnson, the teacher of the Kingwood preschool class, testified that she would implement N.R.'s IEP on a daily basis in her class. (App. 34-35.) The District Court's decision to credit this testimony is a finding of fact and is entitled to deference in the absence of clear error. See Oberti, 995 F.2d at 1220. In light of this credible evidence, we believe that the Board satisfied its burden to show that N.R. would receive a meaningful educational benefit from the Kingwood preschool program.

Appellants also argue that the District Court failed to give adequate consideration to N.R.'s individual potential in concluding that the Kingwood IEP was appropriate. In Ridgewood, this Court reiterated that the educational benefit of an IEP "must be gauged in relation to a child's potential." 172 F.3d at 247 (quoting Polk, 853 F.2d at 185). To fulfill this mandate a district court must "analyze the type and amount of learning" of which the student is capable. Ridgewood, 172 F.2d at 248.

Contrary to appellants' suggestion, the District Court did address N.R.'s specific needs in its analysis. The Court noted that "Dr. Frances Hobbie stated that the[Kingwood]

_____

2. Although the District Court did cite to Polk, it explicitly--and erroneously--applied a "more than trivial benefit" standard. See T.R., 32 F. Supp. 2d at 728.

preschool program would . . . suit N.R.'s needs," and the Court cited to the portion of Dr. Hobbie's testimony that specifically discussed those needs. T.R., 32 F. Supp. 2d at 728. For example, Dr. Hobbie discussed the specific benefits that N.R. could obtain from resource room work:

> I like some individual attention to the areas of need.
> . . . I would definitely think that it would be
> tremendously beneficial for [N.R.] to have some speech
> language therapy individually . . . certainly in the
> resource center I would like to see him get some really
> individual work on speech language.
>
> As far as the motor component where he has some
> difficulty, that again could be worked on in that special
> program.

(App. 45.)

The District Court also cited Dr. Callanan's testimony, in which she further addressed N.R.'s specific needs and capabilities. See T.R., 32 F. Supp. 2d at 729. Dr. Callanan opined that "N.R.'s particular difficulties" did not necessitate a full-day preschool program. (App. 8.) She noted that N.R.'s participation in lunch and recess in the Kingwood program would provide "additional time for socialization." (App. 8.) She further testified that N.R. would benefit from time in the resource center at Kingwood because of "his need for additional time to rehearse skills" (App. 20) and noted that "N.R.'s motoric [sic] difficulties and his communication difficulties could be greatly benefitted by resource center placement." (App. 32.) This testimony-- which was referenced by the District Court in support of its holding--explicitly assessed the Kingwood IEP in light of N.R.'s individual needs and potential.

In sum, the District Court's failure to enunciate the correct "meaningful benefit" test is not fatal to its determination that the 1996-97 IEP offered N.R. a free appropriate public education. Even under the proper standard, the evidence in the record is more than sufficient to support a finding that the Kingwood program would

confer on N.R. a meaningful educational benefit in light of
his individual needs and potential.

7

III.

A.

The IDEA also contains a "mainstreaming" component,
which requires states to establish "procedures to assure
that, to the maximum extent appropriate, handicapped
children . . . are educated with children who are not
handicapped." 20 U.S.C. S 1412(5)(B) (1994).3 We have
interpreted this mandate to require that a disabled child be
placed in the least restrictive environment (hereinafter
"LRE") that will provide him with a meaningful educational
benefit. "The least restrictive environment is the one that,
to the greatest extent possible, satisfactorily educates
disabled children together with children who are not
disabled, in the same school the disabled child would
attend if the child were not disabled." Carlisle Area Sch. v.
Scott P., 62 F.3d 520, 535 (3d Cir. 1995). Appellants
contend that the District Court erred in finding that the
Kingwood preschool program was the LRE for N.R. We
agree with the appellants that the Court failed adequately
to investigate potential alternative placements, and we
remand for consideration of this issue.

In Oberti, this Court adopted a two-part test for assessing
compliance with the LRE requirement. First, the Court
must determine "whether education in the regular
classroom, with the use of supplementary aids and
services, can be achieved satisfactorily." Oberti, 995 F.2d at
1215. Factors the Court should consider in applying this
prong are: (1) the steps the school district has taken to
accommodate the child in a regular classroom; (2) the
child's ability to receive an educational benefit from regular
education; and (3) the effect the disabled child's presence
has on the regular classroom. See id. at 1215-17. Second,
if the Court finds that placement outside of a regular

_____

3. In 1997, Congress amended the IDEA, recodifying the definition of
least restrictive environment at 20 U.S.C. S 1412(a)(5)(A) (1998 Supp.)
and adding a new provision that requires that state special education
funding formulas not result in restrictive or segregated placements, see
20 U.S.C. S 1412(a)(5)(B) (1998 Supp.). Because the Kingwood IEP was
formulated prior to 1997, the amendments do not apply in this case.

8

classroom is necessary for the child's educational benefit, it must evaluate "whether the school has mainstreamed the child to the maximum extent appropriate, i.e., whether the school has made efforts to include the child in school programs with nondisabled children whenever possible." Id. at 1215. These requirements apply to preschool children, see 34 C.F.R. S 300.552, and the Board bears the burden of proving compliance with the IDEA's mainstreaming requirement. See Oberti, 995 F.2d at 1215.

B.

The peculiar facts of this case make a mechanical application of the Oberti test difficult. As the District Court correctly noted, the Kingwood preschool program "cannot be described as a typical `regular class,' nor is it a typical special education class; half of the children in the class are handicapped, and any preschool child living in Kingwood Township may apply to attend the program." T.R., 32 F. Supp. 2d at 730. Nevertheless, it is clear that the Kingwood preschool class is, under the terms of the IDEA, more restrictive than a "regular," fully-mainstreamed preschool class would be. Indeed, the Kingwood program's statement of philosophy states that it "has been designed to meet the needs of Kingwood Township students ages three through five who have an identified disabling condition or a measurable developmental impairment and who would benefit from special education." (App. 100) (emphasis added).

Certainly, the IDEA does not contemplate "an all-or-nothing educational system in which handicapped children attend either regular or special education." Oberti, 995 F.2d 1204, 1218 (quoting Daniel R.R. v. State Bd. of Educ., 874 F.2d 1036, 1050 (5th Cir. 1989)). However, we believe that, under the IDEA's strict mainstreaming requirement, a hybrid preschool program like Kingwood's would ordinarily provide the LRE only under two circumstances: first, where education in a regular classroom (with the use of supplementary aids and services) could not be achieved satisfactorily or, second, where a regular classroom is not available within a reasonable commuting distance of the child.

9

The record contains no indication that N.R. could not have been educated satisfactorily in a regular classroom. Indeed, the Board's own experts admit that N.R.'s placement in Kingwood's regular kindergarten class (which was rejected by the parents) would be fully appropriate. (App. 31-32, 40-41, 46-47, 50-51.) Based on this undisputed testimony, it seems clear that N.R. could have

received a meaningful educational benefit from a regular classroom. Moreover, there is no contention that his behavior would have been disruptive to other students.

Of course, a district that does not operate a regular preschool program is not required to initiate one simply in order to create an LRE opportunity for a disabled child. See 34 C.F.R. S 300.552, Note (1996). However, the school district is required to take into account a continuum of possible alternative placement options when formulating an IEP, including "[p]lacing children with disabilities in private school programs for nondisabled preschool children." Id. Under these circumstances, the District Court erred in not inquiring into whether regular classroom options were available within a reasonable distance to implement N.R.'s IEP, and we remand so the District Court may consider this question.

C.

We next address the appellants' contention that the Board and the District Court erred specifically in failing to include Rainbow Rascals in the continuum of available programs. Appellants claim that Rainbow Rascals would have provided N.R. with a free and appropriate public education in the least restrictive environment and that the state's placement of N.R. in the Kingwood preschool program, rather than in Rainbow Rascals, was in error.

As a substantive matter, it seems likely that the Rainbow Rascals program, aside from its lack of accreditation, could have provided N.R. with an FAPE. For example, the Board's experts admitted that N.R. had made substantial gains during his 1995-96 placement at Rainbow Rascals. (App. 25, 48.) In addition, Rainbow Rascals' classroom was fully mainstreamed and thus less restrictive under the IDEA

10

than the Kingwood preschool program. Therefore, unless the state was barred from considering Rainbow Rascals on its continuum of alternative placements for some other reason, the Board would have been required to approve the Rainbow Rascals placement as the one providing an FAPE in the LRE.

Nevertheless, we agree with the District Court's conclusion that the Board was not required to consider placement in Rainbow Rascals because that program was not properly accredited under New Jersey law. Under 20 U.S.C. S 1401(a)(18)(D), the "free and appropriate public education" required under IDEA must "meet the standards of the State educational agency." Although federal

regulations envision placing disabled children in"regular" private school classes, the universe of private programs that a state may consider is at least partly defined by state law.

Under the state regulations in place at the time the 1996–97 IEP was formulated, New Jersey's program options for IDEA placement included "[a]n approved private school for the handicapped," and "[a]n accredited nonpublic school which is not specifically approved for the education of children with educational disabilities." N.J.A.C.S 6:28–4.2 (1997).4 The regulations defined an "approved private school for the handicapped" as "an incorporated entity approved by the Department of Education . . . to provide special education and related services to pupils with educational disabilities." N.J.A.C. S 6:28–1.3 (1997). It is undisputed that Rainbow Rascals lacked such approval.

The regulations also permitted placement in a non-approved, accredited private school "with the consent of the Commissioner [of Education] or by an order of a court of competent jurisdiction." N.J.A.C. S 6:28–6.5(a) (1997). Accreditation under this regulation required "the on–going, on-site evaluation of a nonpublic school by a governmental or independent educational accreditation agency which is based upon written evaluation criteria that address

_____

4. The sections of the New Jersey Administrative Code dealing with special education were repealed and recodified as amended in 1998. However, the pre-amendment regulations govern this case.

11

educational programs and services, school facilities and school staff." N.J.A.C. S 6:28–6.5(b)(1) (1997). Rainbow Rascals was not accredited as a preschool by any state or independent agency at the time the IEP was formulated, and there is no showing that its personnel possessed the professional certifications and licenses required by N.J.A.C. S 6:28–6.5(b)(5). Indeed, Rainbow Rascals' only license at the time was as a daycare center. (App. 119.) Accordingly, it was not eligible for placement under this regulation, even with the consent of the state Department of Education.5

Because Rainbow Rascals was neither approved nor accredited as a preschool under New Jersey law, it was ineligible for placement consideration by the state under S 1401(a)(18)(D).6 Accordingly, the Board did not err by failing to consider it when preparing N.R.'s IEP.

_____

5. The special education regulations in force in 1996 did contain what

was apparently a general waiver provision, which provided that "[e]xceptions to the requirements of this chapter shall be [m]ade only with prior written approval of the Department of Education through its county office . . . for a period not to exceed one year." N.J.A.C. S 6:28-4.6 (1997). Nevertheless, we do not believe that the IDEA required New Jersey to make an exception for an unaccredited, unapproved program like Rainbow Rascals. Requiring a state to ignore its substantive educational standards by forcing it to make an exception whenever a non-qualifying school provides a somewhat less restrictive environment than an approved school (which also offers the student an FAPE) would effectively replace state standards with the federal courts' case-by-case determinations of educational appropriateness. Such a reading would render S 1401(a)(18)(D) a virtual nullity. As the Supreme Court emphasized in Rowley, the IDEA was not intended to "displace the primacy of states in the field of education" but rather "to assist them in extending their educational systems to the handicapped." 458 U.S. at 208.

6. The dissent suggests that New Jersey's accreditation requirement was a mere formality, unconnected to any substantive criteria. This is untrue. The accreditation regulations in effect at the time required, inter

alia, that there be ongoing, on-site evaluation of the school by a government or independent accreditation agency based on written evaluation criteria, see N.J.A.C. S 6:28-6.5(b)(1) (1997); that personnel providing educational or related services hold appropriate educational certifications, see N.J.A.C. S 6:28-6.5(b)(5) (1997); and that the pupil receive a program comparable to that required to be provided by the

12

D.

Finally, appellants contend that, even if Rainbow Rascals was not an available option for state placement, they are nevertheless entitled for reimbursement for their own unilateral placement under Florence County School District Four v. Carter, 510 U.S. 7 (1993). In Florence, the school district proposed a placement which the court found failed to provide the child with an FAPE. The parents rejected the placement, and enrolled the child in a private program which was not on the state's "approved list," but which did provide a substantive FAPE. The Supreme Court held that the parents were entitled to reimbursement even though the school lacked state approval, because the state standards requirement of 20 U.S.C. S 1401(a)(18)(D) applies only to placements made by a public authority. See id. at 13-14; see also Warren G. v. Cumberland County Sch. Dist., 190 F.3d 80 (1999).

Florence does not require reimbursement for appellants'

Rainbow Rascals placement. Both Florence and Warren G. involved disputes over the FAPE requirement. They did not address the situation we face in this case, where both the state-chosen (accredited) school and the parent-chosen (unaccredited) school would provide an FAPE, but where the unaccredited school would arguably provide a less restrictive environment. Extending Florence to these circumstances would require a state to ensure the maximally optimal LRE placement for each child, even if such a placement is not available in any qualifying school within a reasonable distance.

_____

public schools under the relevant statutes and regulations, see N.J.A.C. S 6:28-6.5(b)(6) (1997). There is no record evidence that Rainbow Rascals met any of these substantive criteria. Moreover, the dissent's contention that "the State at the relevant point in time was not accrediting private preschools" is without basis in the record. Even if the state had imposed some sort of accreditation moratorium, Rainbow Rascals would still have been free to qualify for IDEA placement by obtaining accreditation from a private agency--as it in fact did the following year. In short, there is no evidence that New Jersey's accreditation and approval standards were being used systematically to avoid the state's affirmative obligations under the IDEA.

13

Florence's own language forecloses such an
 537<!>interpretation. Florence gives parents the right to

reimbursement for a unilateral placement in a non-qualifying school only "if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." Florence, 510 U.S. at 15 (emphasis added). By its terms, this is a two-pronged inquiry. The threshold question here focuses on the first prong--viz., whether the Board's proposed placement violated the IDEA by failing to consider Rainbow Rascals. The parental reimbursement mandate comes into play only if we answer yes to this initial question.

Florence, while holding that parents are not bound by S 1401(a)(18)(B)'s state standards requirement, did not suggest that the state is required--or even permitted--to overlook that statutory mandate and consider placements that do not meet its substantive educational standards. Such a reading would go against the plain language of the statute and render the state standards requirement of S 1401(a)(18)(D) a nullity. Because we have found that the Board did not err in rejecting Rainbow Rascals as a potential placement, we cannot find that the "public placement violated IDEA" on these grounds. Of course, if the District Court on remand finds that the Board

improperly failed to consider other potential placements that met New Jersey's substantive standards (see part III(B), supra), the state may have failed to meet its obligations under the IDEA and reimbursement for the Rainbow Rascals placement may be available under Florence.

IV.

We affirm the holding of the District Court that the 1996-97 Kingwood IEP provided N.R. with an FAPE. We vacate the District Court's holding that the Kingwood placement constituted the least restrictive environment, and remand for additional proceedings consistent with this opinion.

14

STAPLETON, Circuit Judge, Dissenting:

The Court concludes that, although "public agencies that do not operate programs for non-disabled preschool children are not required to initiate such programs," the federal regulations do impose upon them an affirmative duty to make all reasonable efforts to find alternatives that will provide the LRE. 34 C.F.R. S 300.552 Note (1987); see also 34 C.F.R. S 300.551. This includes the alternative of "[p]lacing children with disabilities in private school programs for non-disabled preschool children." 34 C.F.R. S 300.552 Note. I agree.

The Court also concludes, quite properly, that Rainbow Rascals was available to provide N.R. with a free and appropriate public education in a wholly integrated environment. It nevertheless relieves the Board of Education of any duty to provide N.R. access to that education because Rainbow Rascals was not "accredited or approved" under the applicable state regulation at the time the placement decision was made. I would have no quarrel with this holding if the record indicated that Rainbow Rascals failed to meet educational criteria established by the State. See 20 U.S.C. S 1401(a)(18)(D) (the FRAP required under IDEA must "meet the standards of the State educational agency."). The record in this case, however, does not suggest there are any such criteria that Rainbow Rascals failed to meet. What the record does affirmatively establish is that the State at the relevant point in time was not accrediting private preschools, and that although state law provided for a waiver of the "accredited or approved" requirement, see N.J. Admin. Code S 6:28-4.6 (Supp. 1994), no request for a waiver was made.1 If a state can so easily avoid its affirmative duty to provide a free and appropriate public education in the least restrictive environment, the promise of the IDEA will be illusory for many. For that

reason, I respectfully dissent. I would reverse and remand with instructions to grant tuition reimbursement.

_____

1. In addition to placement in accredited private schools, state law also authorized placement in preschools "in approved facilities." N.J. Admin. Code S 6:28-1.1(e)(3) (Supp. 1994). The record does not reflect, however, that the State maintained any list of preschools in"approved facilities."

15

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

16