**ERIC H., a minor by his parents, JOHN and Janet H.,**

v.

**METHACTON SCHOOL DISTRICT.**

No. CIV.A.02–7251.

United States District Court, E.D. Pennsylvania.

Feb. 13, 2003.

Jennifer Lowman, Education Law Center–PA, Philadelphia, PA, for Plaintiff.

Ellis H. Katz, Jason R. Wiley, Sweet, Stevens, Tucker & Katz, LLP, New Britain, PA, for Defendant.

## *MEMORANDUM*

BARTLE, District Judge.

Plaintiff Eric H., by his parents John and Janet H. appeal the decision of the Pennsylvania Special Education Appeals Panel ("Appeals Panel") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Before the court are cross-motions for judgment on the administrative record.

In an opinion and order dated June 13, 2002, the Appeals Panel reversed the decision of a local administrative hearing officer. The latter had required the Methacton School District (the "District") to: (1) include video teleconferencing equipment ("VTC") as part of Eric's Individualized Education Program ("IEP"); (2) provide VTC for "all periods of [Eric's] absence"; and (3) provide training for "all staff, parents, students and [Eric] on effective use of VTC." The Appeals Panel held that Eric was not entitled to the use of VTC during those periods that Eric is unable to attend school.

### I.

States must provide every disabled or handicapped student within their jurisdictions with a "free appropriate public education" in the least restrictive educational environment appropriate to the needs of the student. 20 U.S.C. §§ 1412(a)(1) and 1412(5) (IDEA); 34 C.F.R. § 104.33(a) (§ 504). Under the IDEA, "[t]he core of this entitlement is provided by the IEP, the package of special educational and related services designed to meet the unique needs of the disabled child." *Carlisle Area Sch. v. Scott P.,* 62 F.3d 520, 526 (3d

Cir.1995) (citation omitted). An IEP is a written statement which must include, inter alia:

> Petition for writ of certiorari to the United States Court of Appeals for the Circuit denied.1) a statement of the child's present levels of educational performance; 2) a statement of measurable annual goals, including benchmarks or short term objectives; 3)˙a statement of the special education and related services to be provided to the child; 4) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class; 5) a statement of how the child's progress toward the annual goals will be measured.

*Kristi H. v. Tri–Valley Sch. Dist.,* 107 F.Supp.2d 628, 630 n. 2 (M.D.Pa.2000) (citing 20 U.S.C. § 1414(d)). The child's IEP must be "reasonably calculated to enable the child to receive [more than trivial or de minimis] educational benefits." *Bd. of Educ. v. Rowley,* 458 U.S. 176, 207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *see Oberti v. Bd. of Educ.,* 995 F.2d 1204, 1213 (3d Cir.1993). Moreover, this benefit must be "meaningful" and "must be gauged in relation to the child's potential." *Polk v. Cent. Susquehanna Intermediate Unit 16,* 853 F.2d 171, 184–85 (3d Cir.1988).

Parents who are dissatisfied with their child's IEP are entitled to an "impartial due process hearing." 20 U.S.C. § 1415(f) (IDEA). *See* 34 C.F.R. §§ 104.33(c)(4), 104.36 (§ 504). In Pennsylvania, a local hearing officer conducts an initial hearing. The party aggrieved by the decision of the hearing officer may appeal to a state educational agency, in this case the Appeals Panel. 20 U.S.C. § 1415(g). The Appeals Panel "conduct[s] an impartial review ... [and] make[s] an independent decision upon completion of such review." *Id.* A dissatisfied party may appeal the final judgment of the Appeals Panel by filing a civil action "in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A).

When reviewing the decision of the Appeals Panel, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B). "This has been described as a 'modified *de novo* review,' or as 'involved oversight' " by the district court. *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 758 (3d Cir.1995) (quoting *Murray v. Montrose County Sch. Dist.,* 51 F.3d 921, 927 (10th Cir.1995)). Under this standard, we are not "free to substitute [our] own notions of sound educational policy for ˙those of the educational˙agencies [we] review." *Id.* at 757; *see Rowley,* 458 U.S. at 206, 102 S.Ct. 3034. Rather, we must give "due weight" to the state administrative proceedings. *Susan N.,* 70 F.3d at 757. This court has "discretion to determine how much deference to accord the administrative proceedings, and although the district courts 'must consider the administrative findings of fact, [they are] free to accept or reject them.' " *Scott P.,* 62 F.3d at 527 (citations omitted).

Where, as here, the conclusions of the local hearing officer and Appeals Panel differ, our Court of Appeals has instructed that "due weight" to the administrative proceedings generally requires deference to the Appeals Panel and not the hearing officer. *Id.* at 529–30. The only exception arises where the Appeals Panel reverses a credibility-based finding of the hearing officer and the panel's decision to reverse is unsupported by non-testimonial, extrinsic evidence or by the˙record read in its entirety. *Id.* at 528–29.[1] In such a situation,

---

**1.** The Third Circuit has explained that the

district court is to "give 'due weight' to the

the Third Circuit has suggested that a district court "should accord somewhat less consideration" to the panel's ruling. *Scott P.*, 62 F.3d at 529 n. 4.

## II.

The following facts are generally undisputed. Eric is a nine year old resident of the District who, during the 2001–2002 school year, attended second grade at Audubon Elementary School. The District has identified Eric as a student with a disability who is eligible for special education services under the IDEA because he is what has been denominated as "other health impaired." In June 1994, Eric was diagnosed with acute lymphoblastic leukemia. Following chemotherapy treatment and a bone marrow transplant, he developed "graft vs. host" disease. This disease required high-dose immunosuppressant therapy so that his body would not continue to reject the bone marrow transplant. As a result, he contracted bronchiolitis obliterans organizing pneumonia, a form of bronchitis that has narrowed the air passageways in his lungs, making it difficult for him to breathe. The treatment used to control his bronchitis has further suppressed his already fragile immune system. Because his immune system has been significantly compromised, Eric has received no vaccinations.

On doctor's recommendations, Eric must miss school when the risk of infection to him is high. Since he reached school age, he has missed all of kindergarten, a significant amount of first grade, and forty-six days of second grade.[2] Given the nature of his illness, it is difficult to predict with certainty how many school days Eric will miss during each school year.

In December 2000, Eric's parents first requested that the District evaluate him to determine his need for special education services. In July 2001, the District offered and his parents accepted an IEP for Eric that provided for, among other things, homebound instruction for one hour per day after he had missed three days of school in a row.[3] Only if he missed more than twenty school days in a row would his IEP team reconvene to determine a need for more extensive instruction in the home.

Because Eric has missed a significant number of school days, his social progress and maturity has lagged behind that of his peers. In response, the IEP identified a variety of goals designed to address his social and behavioral needs. These needs are at the heart of this dispute. Like the Hearing Officer, the Appeals Panel specifically noted that "[Eric's] needs are in the area of socialization, organization, appropriate classroom behavior, and interpersonal relationships." Special Education Opinion Number 1252 (June 13, 2002) at 1. Accordingly, Eric's July 2001 IEP established goals concerning his knowledge of school rules, his sensitivity toward the feelings of peers and his understanding of the strengths and limitations of others.

While the parties generally agree on Eric's need for social and behavioral improvement, they disagree on how to accomplish the objectives set forth in his

appeals panel's decision when it reverses the hearing officer's conclusions of law, inferences from proven facts, and factual findings based on credibility judgments where non-testimonial, extrinsic evidence justified the appeals panel's contrary decision." *Scott P.*, 62 F.3d at 529.

2. During periods of absence from first grade, the District provided Eric with homebound instruction. However, there were times when homebound instructors were not permitted in Eric's home because they posed a risk of infection.

3. The July 2001 IEP was effective for the 2001–02 school year.

IEP during the times when he is physically unable to attend school. The District contends that his needs can be met through face to face contact with a homebound instructor or through instruction in the home. The District has acknowledged, however, that some of his social and behavioral objectives cannot be implemented during periods of homebound instruction and would therefore be eliminated.[4] The plaintiffs contend that the key to Eric's social progress is a consistent exposure to a classroom setting. Homebound instruction by itself, they argue, cannot supply this consistency. They have therefore asked the District to make available to them the use of video teleconferencing equipment so that Eric can participate "virtually" in the classroom even when he cannot physically be present.

Eric's parents first requested the use of VTC equipment in December 2000. Although the parties discussed including VTC in the July 2001 IEP, the District ultimately refused because it believed a free appropriate public education could be provided without it. On September 25, 2001, the parents and the District nevertheless reached an agreement on the use of VTC for the 2001–02 academic year.[5] At no point, however, did the use of VTC become a part of Eric's 2001–02 IEP. Pursuant to the agreement, no other person is allowed in Eric's room when the VTC is in use.

Eric's use of VTC began in December 2001 for absences of two hours or longer.

The administrative record reflects that VTC provides him with important opportunities for peer interaction and cooperative learning. He is able to participate in classroom activities and routines, interact with his teacher, and enjoy recess with other students. Furthermore, with the help of VTC, he has made friendships and maintained them better than he has in the past.

The use of VTC, however, has not been without problems for Eric, his classmates and his teacher. Some of his targeted social and behavioral conduct become worse when he is on VTC. He acts as if he is "on stage," gets off-task, breaks rules and engages in attention-seeking behaviors. This inappropriate demeanor interferes with Eric's peer relationships. Moreover, his teacher's ability to correct him through non-verbal cueing and other methods, has had only short term benefit. According to the testimony of Eric's teacher, who had first-hand knowledge of the effect of VTC on Eric and his classmates, VTC is disruptive to other students and the class. The hearing officer accepted this testimony.

In March 2002, the District conducted a Functional Behavioral Assessment ("FBA") of Eric. The FBA raised numerous social and behavioral concerns, including "focusing on tasks, following instructions, anger, rudeness to peers and adults, inappropriate peer interaction and attention seeking behavior." Decision of Special Education Hearing Officer (April 30,

4. Objectives and benchmarks that need peers would be eliminated in the instruction in the home IEP. For goals requiring interaction with classmates, the homebound instructor would play the role of the classmate.

5. The VTC was donated by the Talia Seidman Foundation at no cost to the District. VTC equipment generally comprises cameras mounted on two television monitors, one in a remote location and one in the classroom.

The cameras and monitors are then linked through a telephone line. On each end, the cameras may be manipulated with a remote control to pan left and right and to capture close-up images and wide angle shots. When used during periods of Eric's absence, the VTC was usually operated by Eric's teacher. On occasion, however, Eric's classmates operated the remote control.

**518**

2002) at 5. Many of these concerns are reflected in Eric's revised April 5, 2002 IEP, which has increased his social and behavioral objectives.[6] For example, the April IEP has identified the following behavioral needs: "socialization ... inappropriate attention seeking, off-task behavior ..., age appropriate socialization skills in interactive play, rudeness to others ..., cooperative play, understanding feelings of others and respecting others space." *Id.* The IEP does not, however, provide for VTC.

Shortly after the April 2002 IEP was issued, two due process hearing sessions were held to address the issue of whether the District is legally required to provide Eric with VTC equipment as part of his IEP. As noted above, the due process Hearing Officer concluded that the use of VTC was necessary to ensure that Eric was receiving a free appropriate public education in the least restrictive environment. Accordingly, he ordered the District to: (1) include VTC in his IEP; (2) provide for VTC to be used during all periods of absence; and (3) provide training for staff, parents, students in the use of VTC. The Appeals Panel, however, reversed that decision. Among other relief, the parents request an order reinstating the Hearing Officer's decision in its entirety.

### III.

■ We turn first to plaintiffs' claim under the IDEA. The threshold issue is whether Eric's IEP, which does not provide for the use of VTC during his absences from school, is sufficient to ensure that Eric is receiving a free appropriate

public education in the least restrictive educational environment. *See Oberti,* 995 F.2d at 1213–14. The plaintiffs first contend that the District has not demonstrated that Eric's IEP is appropriate because the services that it proposes do not permit Eric to realize fully his extensive social and behavioral objectives. They assert that VTC is necessary to fill this gap. Based on our review of the record in its entirety, giving due weight to the administrative proceedings, we disagree.

As noted above, the obligation to ensure a free appropriate public education to handicapped students requires a school district to provide an educational program that confers on the student a "meaningful" educational benefit. *See T.R. v. Kingwood Twp. Bd. of Educ.,* 205 F.3d 572, 577 (3d Cir.2000) (citations omitted). This does not mean that a school district is required to "maximize the potential of handicapped children." *Id.* (citing *Rowley,* 458 U.S. at 197 n. 21, 102 S.Ct. 3034). Rather, as the Third Circuit explained in *Scott P.,* an educational program does not fall short of the free appropriate public education requirement simply because a better or optimal program may be available. *See Scott P.,* 62 F.3d at 533–34.

Here, the plaintiffs and the District have agreed on an IEP with homebound instruction that will accrue at a rate of one hour per day beginning with the first day that Eric is absent from school. To the extent that Eric misses or is projected to miss twenty consecutive days, the IEP team is required to reconvene to determine a need for a change in placement or a revision to his IEP. The Hearing Officer determined that this use of homebound

---

**6.** A September 2002 IEP, which is consistent with the April IEP, has since been implemented. The parties have agreed to supplement the administrative record with this revised IEP. The September version modifies the District's homebound instruction obligations. Homebound instruction now accrues at the rate of one hour per day beginning with the first day of absence.

instruction "does not permit meaningful progress." Decision of Special Education Hearing Officer at 11. The Appeal's Panel concluded otherwise, holding that Eric can "learn the rules and appropriate behavior during homebound instruction [and] can practice them in a variety of appropriate ways, including with simulations, by role playing, in the classroom, on the playground, etc." Special Education Opinion No. 1252 at 2.

The District has acknowledged that some of the social objectives set forth in Eric's IEP cannot be implemented at all during the periods that he receives homebound instruction. This does not mean, however, that these or any of his goals will be overlooked and go unfulfilled. Although the parties cannot predict the number of days that Eric might miss in any given school year, the administrative record reflects that Eric attended school on seventy-five percent of the school days during second grade. Because most of his social needs implicate his behavior in the classroom and his interaction with his peers and teacher, we believe that he and the District have a significant opportunity to address these needs on the days when he is physically present in classroom. Certainly Eric's presence in school will permit him and the District to work diligently on the following objectives:

> employ[ing] the use of a conversational tone without more than 2 teacher prompts; work[ing] cooperatively with peers to complete the task as evidenced by use of appropriate tone ...; demonstrat[ing] a respect for classmate's personal space ... and, when offering constructive criticism about a peer's project ...; and demonstrat[ing] increased sensitivity towards the feelings of others through the use of courteous speech.

School District Ex. S–39 to the Admin. Record at 7, 9. Whether or not his IEP provides for an "optimum" level of service in all instances is not the issue. Instead, we must focus on whether the administrative record demonstrates by a preponderance of the evidence that the IEP is calculated to confer a meaningful educational benefit on him. We conclude that it is. Quite simply, this is all that the IDEA requires. *See Scott P.,* 62 F.3d at 535. As the Supreme Court has explained, the IEP required under the IDEA is meant to be a "basic floor of opportunity." *Rowley,* 458 U.S. at 201, 102 S.Ct. 3034; *Scott P.,* 62 F.3d at 534 (citations omitted). We therefore agree with the Appeals Panel that Eric's IEP provides him with a free appropriate public education.

■ The plaintiffs also contend that Eric's IEP is deficient because homebound instruction without VTC is a more restrictive placement than homebound instruction with VTC. Under the IDEA, school districts also must ensure that a handicapped student is educated in the "least restrictive educational environment appropriate to [his or her] needs ...." *Scott P.,* 62 F.3d at 534; *see Oberti,* 995 F.2d at 1213–14. The statute specifically instructs states to assure that:

> [t]o the maximum extent appropriate, children with disabilities ... are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A). This directive has become known as IDEA's "mainstreaming" requirement. *See Oberti,* 995 F.2d at 1213–14.

In *Oberti*, the Third Circuit adopted the following two part test for determining whether a school district has satisfied its mainstreaming obligation. First, we must assess whether education in the regular classroom, with the use of supplementary aids and services, can be achieved satisfactorily. *Oberti*, 995 F.2d at 1215 (citing *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir.1989)). Analysis of this prong requires consideration of several factors, including:

> (1) whether the school district has made reasonable efforts to accommodate the child in a regular classroom with supplementary aids and services; (2) a comparison of the educational benefits available in a regular class and the benefits provided in a special education class; and (3) the possible negative effects of inclusion on the other students in the class.[7]

*Id.* at 1220. If the child cannot satisfactorily be educated within the regular classroom and placement outside the class is necessary, then we also must decide whether "the school has included the child in school programs with nondisabled children to the maximum extent appropriate." *Id.* at 1218 (citation omitted).

The Hearing Officer determined that VTC is necessary as a supplementary aid or service to ensure that Eric is educated in the least restrictive environment and can achieve the objectives set forth in his IEP. The Appeals Panel reversed, concluding that VTC did not qualify under the IDEA as a supplementary aid or service or an "assistive technology device." Although we have concerns about the Appeals Panel's narrow interpretation of the

IDEA and its implementing regulations, the record as a whole demonstrates, consistent with the Panel's conclusion, that the District is not violating the Act's mainstreaming requirement.[8]

It is beyond dispute that, during certain times of the school year, Eric cannot physically be educated with his peers in his regular classroom. When the risk of infection is high, he must remain at home. No physical aid, technological device or supplementary service offered by the school will permit him to overcome the side effects of his disability and physically attend school. Although in the past the District took additional steps to allow Eric to attend class "virtually" with the use of VTC during periods of absence, they have refused to include VTC as part of his current IEP. We believe that this decision comports with the requirements of the IDEA.

Even assuming, as the plaintiffs argue, that homebound instruction with VTC is a less restrictive placement, that result is counterbalanced by the Hearing Officer's and Appeals Panel's findings that VTC is a disruptive influence on Eric and his class. As both the Hearing Officer and the Appeals Panel held, Eric's use of VTC disrupts the classroom environment. Moreover, Eric's behavior while on VTC prevents him from making progress toward at least some of his social and behavioral goals.

The plaintiffs argue that the Panel's conclusion is entitled to no deference because, in reaching it, it improperly reversed a credibility based finding of the Hearing Officer. They specifically contend that the Appeals Panel improperly credited Eric's

7. The Third Circuit in *Oberti* acknowledged that additional factors may be relevant as well depending on the circumstances of the individual case. *Oberti*, 995 F.2d at 1218 n. 25.

8. We need not for the purposes of this decision resolve whether VTC qualifies under the IDEA and its implementing regulations as an "assistive technology device" or "supplementary aid or service."

teacher, whose testimony concerning the disruptiveness of VTC was arguably discredited by the Hearing Officer. We disagree. The Hearing Officer specifically found that VTC was disruptive and impeded Eric's progress toward reaching his goals:

> [s]ome of [Eric's] targeted social/behavioral needs are worse on VTC than in class .... He sometimes acts as if "on stage." [Eric] engages in inappropriate behavior when using the VTC. He gets off task .... He breaks rules and engages in attention seeking behavior .... [Eric's] inappropriate social/behavior interferes with peer relationships.

Although he ultimately determined that VTC should be included in Eric's IEP, nowhere in his decision did he explicitly discredit the testimony of Eric's teacher. Rather, he explicitly accepts the teacher's testimony in his findings of fact. While the Hearing Officer may, in fact, have decided that her testimony as to disruptions was not credible, there is simply no way to determine from the language he used that this was the case. Having reviewed the record in its entirety, we will defer to the Appeals Panel's conclusion.

There is no doubt that the District has endeavored as much as and wherever possible to include Eric in his regular education classroom with his non-disabled peers. Were it not for the fact that Eric's physicians have advised him to remain at home when the risk of infection to him is high, Eric would likely be present in class whenever he is otherwise healthy and able. The District certainly has done nothing to prevent him from attending school with his regular class. We therefore believe that the District's IEP comports with the IDEA mainstreaming requirement.

## IV.

Plaintiffs also contend that the District is violating § 504 of the Rehabilitation Act of 1973 by failing to provide Eric with VTC for use when he is unable to attend school. Section 504 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a); see 29 U.S.C. § 705(20). To establish a violation of § 504, plaintiffs must demonstrate that:

> (1) [Eric] is "disabled" as defined by the Act; (2) he is "otherwise qualified" to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) [Eric] was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir.1995) (quoting *Nathanson v. Medical Coll. of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir.1991)). In addition, [to be liable] the plaintiff[s] must demonstrate that defendants know or should be reasonably expected to know of [Eric's] disability. *See id.* But ... plaintiff[s] need not prove that [the] defendant['s] discrimination was intentional. *See id.*

*Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 253 (3d Cir.1999).[9]

Regulations promulgated under § 504 also require that school districts "provide a free appropriate public education to each

---

9. Among other things, § 504 specifically prohibits school districts from providing "different or separate aid, benefits, or services to handicapped persons ... unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others." 34 C.F.R. § 104.4(b)(1)(iv).

qualified handicapped person who is in [its] jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a). An appropriate education is "the provision of regular or special education and related aids and services that ... are designed to meet the individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met ...." 34 C.F.R. § 104.33(b)(1). Disagreements over whether a district is providing a free appropriate public education under § 504 can be addressed through the exact same hearing process as IDEA claims. *See* 34 C.F.R. § 104.33(c)(4); 34 C.F.R. § 104.36.

Plaintiffs do not argue that the District has violated the free appropriate public education requirement of § 504. Rather, they assert that the District is discriminating against Eric, solely on the basis of his disability, by failing to provide him with VTC during periods of homebound instruction. Specifically, they contend that by failing to do so, the District is providing Eric with a different and less beneficial program of education than that offered to children without disabilities. *See* 34 C.F.R. § 104.4(b)(iv). We disagree.

Even assuming that VTC would under some circumstances be sufficient to confer a benefit on Eric that is available to his non-disabled peers, this is not the case here. The record, including the explicit findings of the Hearing Officer and Appeals Panel, reflects that Eric's use of VTC disrupted his classmates, teacher and even impeded his progress toward some of his targeted social and behavioral objectives. This disruption outweighs any possible benefit that VTC might provide. As the Appeals Panel concluded:

substantial evidence in this case makes it clear that VTC is not appropriate for Eric. The use of VTC does not reduce unwanted disruptive behavior or in-

crease prosocial behavior. Eric continues to have difficulty using nonverbal cues, making eye contact, and being redirected in VTC situations. He continues to act inappropriately during VTC .... Moreover, Eric's behavior worsens using VTC.

Special Education Opinion Number 1252 at 2–3. (citations omitted). We therefore find that Eric has not been denied benefits to which non-disabled students have been accorded.

Furthermore, the administrative record does not support the conclusion that the District's refusal to provide Eric with VTC has been made solely "on the basis of his disability." Rather, the Hearing Officer and Appeals Panel found that the District believes that it need not provide VTC because VTC is not necessary to ensure that Eric is receiving a free appropriate public education under the IDEA, a conclusion that we endorse. As noted above, both also found that some of Eric's targeted social and behavioral conduct worsened when he used VTC. Moreover, the inclusion of VTC in the classroom disrupted Eric's teacher and class.

Other than the fact that Eric is disabled and has not been provided with VTC, the plaintiffs have pointed to no evidence in the record that would demonstrate that the District acted on the basis of his disability by refusing to include VTC in his IEP. We do not believe that such a showing is sufficient to establish that the District violated § 504.

## V.

Based on the foregoing, we will grant judgment in favor of Methacton School District.

## ORDER

AND NOW, this          day of February, 2003, for the reasons set forth in the

accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of Methacton School District for judgment on the administrative record is GRANTED;

(2) the motion of plaintiffs for judgment on the administrative record is DENIED; and

(3) judgment is entered in favor of defendant Methacton School District and against plaintiff Eric H., a minor by and through his parents John and Janet H.