**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 08-3966 and 09-2775

A. G.,
a minor, by her parent, S.G.,
                                        Appellant

v.

WISSAHICKON SCHOOL DISTRICT; STANLEY DURTAN, JR.,
individually and in his official capacity as Superintendent,
Wissahickon School District; JUDY CLARK, individually and in her
official capacity as Assistant Superintendent, Wissahickon School District;
PAUL H. REIBACH; BARBARA P. MOYER; BETSY CORNISH;
FRANCES B. CROFTON; SETH E. GRANT; STEVEN K. KREIDER;
PATRICIA F. LATIMER; YOUNG K. PARK; TERESA WILLIAMS,
individually and in their official capacities as members of the
Wissahickon School District Board of School Directors;
KELLE HEIM-MCCLOSKEY, individually and in her official capacity as a
Supervisor of Special Education and Gifted, Wissahickon School District

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 04-cv-03880)
District Judge:  Honorable Timothy J. Savage

Submitted Under Third Circuit LAR 34.1(a)
March 11, 2010

Before: BARRY, JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion Filed: March 29, 2010)

---

OPINION

---

BARRY, <u>Circuit Judge</u>

A.G., by and through her mother, filed for a due process hearing challenging, among other things, the Wissahickon School District's (the "District") provision of a free appropriate public education ("FAPE") and its compliance with the Individuals with Disabilities Education Act's ("IDEA") mainstreaming requirement.[1] The Pennsylvania Appeals Panel ordered the District to include A.G. in one regular, academic course and denied compensatory education. The District Court affirmed and, in a later order, denied A.G.'s application for attorneys' fees. We will affirm both orders.

**I.**

A.G. is a non-verbal, highly distractible eighteen-year-old. She suffers from severe mental retardation, has static, non-progressive encephalopathy, vision problems, and developmental delays. She is unable to identify letters, numbers, or colors, cannot match items, and has difficulty dressing, undressing, eating, grasping a pencil, and brushing her teeth. She is not yet toilet trained.

The District proposed that A.G. be placed in a full-time life skills support class for

---

[1] Integrating children with disabilities in regular classrooms is commonly known as "mainstreaming."

the 2003-2004 school year, and provided for A.G.'s mainstreaming for school assemblies, lunch, homeroom, gym, and recess. That placement prompted A.G. to file an administrative action in Pennsylvania alleging, among other things, that: (1) she was denied a FAPE because the District failed to educate her in the least restrictive environment ("LRE"); and (2) that denial entitled her to compensatory education. The Hearing Officer concluded that because A.G. was not educated in the LRE, she was denied a FAPE, and directed that she be fully mainstreamed and awarded compensatory education. The Appeals Panel, however, ordered that A.G. need only be mainstreamed for lunch, recess, physical education, homeroom, music, art, and one academic class, and reversed the compensatory education order.

A.G. then filed an action in federal court seeking full mainstreaming and compensatory education. In light of the Supreme Court's opinion in *Schaffer v. Weast*, 546 U.S. 49 (2005), however, which shifted the burden of persuasion in IDEA cases, the District Court remanded the matter to the Hearing Officer. In 2006, the Hearing Officer again concluded that A.G. was not provided education in the LRE, and again ordered compensatory education and that A.G. be fully mainstreamed. The Appeals Panel once more disagreed. The Appeals Panel concluded that A.G. should be mainstreamed in at least one academic class and reversed the requirement of compensatory education.

The District Court affirmed, concluding that the District provided A.G. with a FAPE and that compensatory education was improper. In a separate order, the Court

denied A.G.'s motion for attorneys' fees related to the 2006 administrative proceedings. [2]

## II.

Where a state has a two-tiered administrative structure, the federal court should begin its review with the appellate opinion. *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 528-29 (3d Cir. 1995). A district court reviews the administrative determination under a modified *de novo* standard. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). Factual findings are based on a preponderance of the evidence with "due weight" afforded to the agency's determinations. *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004).

We exercise plenary review over questions of law, but review a district court's factual findings for clear error. *Ramsey Bd. of Educ.*, 435 F.3d at 389 (quotation omitted). We review a district court's denial of attorneys' fees for abuse of discretion. *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 422 (3d Cir. 2008).

## III.

### A.

The IDEA provides that school districts must to the "maximum extent appropriate" educate children with disabilities "with children who are not disabled." 20 U.S.C. § 1412(a)(5)(A). Referred to as the IDEA's mainstreaming component, the statute requires that a disabled child be placed in the LRE. *See Ramsey Bd. of Educ.*, 435 F.3d at 390.

---

[2] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

In *Oberti v. Board of Education*, we set forth a two-part test to determine whether a school district is complying with the mainstreaming requirement. 995 F.2d 1204, 1215 (3d Cir. 1993). First, a "court must determine whether education in the regular classroom, with the use of supplementary aids and services, can be achieved satisfactorily." *Id.* (quotation omitted). Second, if placement outside the regular classroom is necessary, then a "court must decide whether the school has mainstreamed the child to the maximum extent appropriate." *Id.*

With respect to the first inquiry, *Oberti* required that a court consider:

(1) whether the school district has made reasonable efforts to accommodate the child in a regular classroom; (2) the educational benefits available to the child in a regular class, with appropriate supplementary aids and services, as compared to the benefits provided in a special education class; and (3) the possible negative effects of the inclusion of the child on the education of the other students in the class.

*Id.* at 1217-18.

The first factor calls upon us to determine whether the District considered the "whole range of supplemental aids and services," including "efforts to modify the regular education program to accommodate" A.G. *Id.* at 1216. Mere token gestures are insufficient. *Id.* Here, the District implemented numerous supplemental aids and services, including: (1) modification of curriculum and materials; (2) modification of assignments to comport with A.G.'s Individualized Education Plan ("IEP"); (3) provision of a one-on-one aide; (4) additional interaction with the regular classroom teacher; (5) small group and one-on-one instruction; (6) consultation between special education and

regular education teachers; (7) adapted equipment; and (8) extensive teacher-parent communication. The District Court concluded that the District provided substantial support in the form of supplemental aids and services. We agree.

Next, we compare the educational benefits A.G. would receive in a regular classroom (with supplementary aids and services) with the benefits she would receive in a special education class. In so doing, we are mindful of the unique benefits a special needs child may obtain from mainstreaming, such as the development of social and communication skills. *Id.* at 1216. Here, the record demonstrates that A.G. made little if any progress on her academic goals in her mainstreamed courses and received little educational benefit from her mainstreaming. Moreover, A.G. had minimal to no interaction with the regular education students. That lack of progress must be juxtaposed with the progress she made on life skills such as eating, navigating the school, acknowledging people, dressing, hand washing, toileting, and use of expressive language while enrolled in life skills curriculum.

Finally, we consider the effect of A.G.'s mainstreaming on the other students in the regular classroom. A.G. is prone to frequent, loud vocalizations that negatively impact her classmates. She distracts her peers by removing her shoes and socks, inappropriately clapping and grinding her teeth, having difficulty toileting, and, on occasion, inappropriately touching other students. Although not excessive nor dispositive, those disruptions are notable.

Applying the *Oberti* factors, the District Court concluded that A.G. cannot be satisfactorily educated full-time in a regular classroom with supplementary aids and services. That conclusion was not clearly erroneous.

With that conclusion in place, we turn to the second step – determining whether the District has mainstreamed A.G. to the maximum extent possible. The Appeals Panel decision required that A.G. be mainstreamed for lunch, recess, physical education, homeroom, music, art, and one academic class. The District complied, and we agree with the District Court's finding that A.G. is being educated in the LRE.

**B.**

Under the IDEA, "the denial of an appropriate education . . . creates the right to compensatory education." *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 250 (3d Cir. 1999) Thus, the "right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education." *Id.*

Contrary to A.G.'s conflation of the two concepts, FAPE and LRE are distinguishable, a proposition supported by *T.R. v. Kingwood Township Board of Education*, 205 F.3d 572, 578 (3d Cir. 2000). There, we affirmed the district court's finding that the student received a FAPE, but vacated the district court's holding that the student's placement was the LRE. *Id.* at 575. T.R. demonstrates that a school district can provide a student a FAPE while failing to educate a student in the LRE.

Thus, for purposes of entitlement to compensatory education, the ultimate inquiry

is two-fold: (1) did the school district provide the student with a FAPE and (2) if it failed to do so, when did the school district know of that failure?

A school district provides a FAPE by designing and administering an IEP "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *Shore Reg'l High Sch. Bd. of Ed.*, 381 F.3d at 198 (quotation omitted)). Here, the District Court correctly found that the District provided A.G. with a meaningful educational benefit, as evidenced by the advances she made in life skills, such as hygiene, toileting, eating, navigating the school, and acknowledging people, and provided her with an IDEA compliant education. An award of compensatory education would have been improper. *See Lauren W. v. DeFlaminis*, 480 F.3d 259, 272-73 (3d Cir. 2007).

**IV.**

Finally, we review the District Court's denial of A.G.'s motion for attorneys' fees incurred with respect to the 2006 administrative proceedings.

The IDEA provides that a "court, in its discretion, may award reasonable attorneys' fees . . . to a the prevailing party." 20 U.S.C. § 1415(i)(3)(B). To qualify as a prevailing party, a plaintiff must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *John T. v. Del. County Intermediate Unit*, 318 F.3d 545, 555 (3d Cir. 2003) (quotation omitted). The

"touchstone" of the inquiry is "the material alteration of the legal relationship of the parties." *Id.* (quotation omitted).

Here, A.G.'s federal complaint sought full mainstreaming and compensatory education. The federal action, however, achieved nothing more than was awarded by the Appeals Panel. Because A.G. was not a prevailing party, the District Court did not abuse its discretion in denying her motion for attorneys' fees..

**V.**

We will affirm the orders of the District Court.