NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1509
_____

ZACHARY J., through his parents
Jonathan and Jennifer J. of Lafayette Hill, PA,
Appellant

v.

COLONIAL SCHOOL DISTRICT

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-19-cv-00652)
District Judge: Honorable John M. Younge
_____

Submitted on March 20, 2023
_____

Before: RESTREPO, PHIPPS, and ROTH, *Circuit Judges*

(Filed: January 31, 2024)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*

_____

[*] This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Jonathan and Jennifer J. ("Parents"), parents of Zachary J., appeal from the District Court's Order granting a motion by Appellee, the Colonial School District (the "District"), for judgment on the administrative record, and dismissing Parents' cross-motion for judgment on the administrative record. In granting the District's motion, the District Court affirmed the denial of relief by the Hearing Officer following an administrative due process hearing. Because we agree with the District Court that the District provided Zachary with a free appropriate public education ("FAPE") and did not commit a substantive violation of the Individuals with Disabilities Education Act ("IDEA") or Section 504 of the Rehabiliatation Act of 1973, 29 U.S.C. § 794 ("Section 504"), we affirm.

## I. Factual Background

### A. 2014–15 School Year: Second Grade

Prior to the start of Zachary's 2014-15 school year, Parents attended an Individualized Education Program ("IEP") meeting and approved of the IEP ("June 2014 IEP"), which was implemented throughout the school year. The goals of this IEP were to target Zachary's abilities in various respects, including following multi-step instructions, "relat[ing] personal experience with a topic sentence and at least two details," and verbally supporting responses to classroom prompts. A992. More specifically, the IEP aimed to address his difficulties in focusing due to his ADHD diagnosis and provide speech and language support. To achieve these goals, the IEP included several Specially

2

Designed Instructions ("SDIs"), including sitting near the teacher, comprehension checks, use of lists to help with organization, and extra time to complete assignments.

In December 2014, Parents communicated with the District via email about their concerns regarding Zachary's off-task behaviors. They also expressed concerns that he was falling behind in writing due to his pull-out speech classes. As a result, the parties agreed to an informal assessment of Zachary's behavior.

After conducting an evaluation of Zachary, the District issued a Reevaluation Report ("RR") dated March 9, 2015 ("First 2015 RR"). In it, the District concluded that Zachary was still eligible for special education due to his speech impairment. Based on standardized testing, Zachary was determined to have overall average intellectual abilities, while scoring below average in some areas. In addition, the behavior evaluation revealed that he demonstrated generally appropriate classroom behavior, but that he was inattentive, easily distracted, and displayed symptoms of anxiety.

On April 1, 2015, Parents requested that the RR be updated due to various concerns. They believed the RR overestimated his writing ability and underestimated his ADHD and anxiety. A few days later on April 9, the IEP team met and offered a new IEP ("April 2015 IEP"). Parents accepted the April 2015 IEP that same day. This IEP was almost entirely the same as the June 2014 IEP. However it added the use of organizational strategies prior to beginning writing assignments. Parents communicated to the District their satisfaction with the new April 2015 IEP and Zachary's improvements.

On May 28, 2014, the District provided an updated RR ("Second 2015 RR") and concluded that Zachary was a student with a Speech and Language Impairment. This RR recommended continuing the strategies already in place.

In June 2015, the IEP team reconvened and updated Zachary's IEP to highlight his writing difficulties and added a writing goal ("June 2015 IEP"). Parents approved.

## B. 2015–16 School Year: Third Grade

Zachary began the 2015–16 school year in third grade under the implementation of the June 2015 IEP. For all subjects except writing he was in a regular classroom setting with assistance from a special education teacher. He received written expression instruction in a separate learning support classroom while the other students learned writing in the regular education classroom. Some curriculum-based assessments revealed that Zachary was proficient or partly proficient in most subjects. Although the June 2015 IEP did not include a reading goal and his attention issues affected his reading comprehension, Zachary was "approaching" end-of-year third grade level expectancy in reading. His teachers also noted on his report card that Zachary was "progressing" in all social skills areas except for the domains of "stays on task" and "demonstrates organizational skills."

The District reported no disciplinary issues with Zachary during third grade, though he still struggled with focus and distractibility. There were some minor changes to his ADHD medication dosage, but by midyear, his medication and behavior had stabilized.

During the May 2016 annual IEP meeting, the District updated Zachary's IEP ("May 2016 IEP"). This updated IEP did not reflect many major substantive changes, although a change was made to reflect progress he made during the third grade and changes to his SDIs for non-verbal cues to decrease calling out.

## C. 2016–17 School Year: Fourth Grade

Under implementation of the May 2016 IEP, Zachary received most of his fourth-grade instruction in a regular education classroom. However, he also received supplemental small group Language Arts instruction with a special education teacher for about 60 minutes per day. His special education teacher stated that he did not need a modified curriculum and just needed some accommodations for attention and focus, such as extra time to complete assignments, and different delivery of the same material.

Throughout the fourth grade, Zachary had small group Language Arts lessons for one hour per day when his regular class was not learning any new material. His special education teacher testified that his reading was at grade level, despite some difficulty with longer reading assignments. She also changed his writing goals to reflect fourth-grade standards. She did not explicitly change his IEP but received approval from his parents to implement these changes.

There were changes to Zachary's ADHD medication dosages at some point during fourth grade, which caused some "ups and downs" throughout the year. His parents decreased his Vyvanse dosage back to the lower dosage he was taking in third grade

5

"[d]ue to feelings of anxiety." A230. Parents agreed that the District would not implement a new behavior plan for Zachary until his medication stabilized.

In November 2016, Zachary began expressing suicidal ideation. Thereafter, in November or December, his parents contacted Dr. Kara Schmidt, a private psychologist, and inquired about a neuropsychological evaluation. Dr. Schmidt did not evaluate Zachary at that time.

In January 2017, the IEP team met with Zachary's parents to discuss any medication and behavior changes. The District informally recommended an occupational therapy ("OT") evaluation and a small social skills group for Zachary. Parents rejected these suggestions, as they did not want to remove Zachary from the regular classroom. Parents informed the District that they wanted a neuropsychological evaluation done, and the District offered to have one of its doctor's conduct one, but the parents wanted another doctor to do it.

In February and March 2017, Dr. Schmidt conducted an evaluation of Zachary and issued a Neuropsychological Evaluation ("Independent Educational Evaluation" or "IEE") in May 2017. Dr. Schmidt concluded that Zachary met the criteria for ADHD, a specific learning disability in reading fluency and essay writing, and a language disorder.[1] Dr. Schmidt found issues with Zachary's reading comprehension, his writing skills, his organizational skills, and his attention/focus.

---

[1] The District Court and Hearing Officer both "gave little credibility" to Dr. Schmidt's IEE. A24.

6

The day before the May 2017 annual IEP meeting, Parents gave the IEP team a copy of the IEE. At the meeting the next day, the IEP team issued a new IEP ("May 2017 IEP"), which did not include any of the IEE's recommendations, because Parents only provided a copy of the IEE to the District the day before. At the meeting, the District and Parents discussed the IEE's recommendations, how the District could address some of the concerns, and ways in which other concerns were already being addressed by his current IEP. The May 2017 IEP essentially modified the previous IEP to reflect the fourth-grade writing goals that his special education teacher was already implementing. Though the District did not apply all of the IEE's suggestions, it did agree with and offer solutions for some. For example, the District suggested and informally offered a social skills group to help Zachary's social-emotional and anxiety concerns. Parents rejected that suggestion due to concerns that this option would have required him to leave the regular classroom.

Ultimately, his parents rejected the May 2017 IEP. After the IEP team had time to review the IEE, the team and Zachary's parents met again in July 2017. The District proposed a slightly modified version of the May 2017 IEP. This new IEP ("July 2017 IEP") added a few additional SDIs, such as participating in a small social and executive functioning skills group two-to-three times per week, and focusing on concerns over focus and attention. Zachary's parents rejected the July 2017 IEP, withdrew Zachary from the District's school, and enrolled him at AIM Academy, a private school.

Zachary's fourth-grade end-of-year report card included similar grades and evaluations as those from his third-grade year, reflecting that he was advanced in some

subjects, proficient in most others, and partly proficient in others.  He met expectations set in his IEP.  He did, however, need assistance to meet the writing goals set by his special education teacher and later included in his IEP.

## II.      Procedural history

Parents filed a due process complaint against the District seeking compensatory education, tuition reimbursement, and reimbursement for the payment of a private IEE, arguing that the District failed to provide a FAPE to Zachary.  After an administrative proceeding, the Hearing Officer denied Parents relief, finding that the District had provided Zachary with a FAPE.  Thereafter, Parents appealed to the District Court, which affirmed the Hearing Officer's denial of relief, and Parents filed this appeal.

## III.     Discussion[2]

### A.  Whether the District Committed a Substantive Violation of IDEA

IDEA requires that states receiving federal education funding provide a FAPE to all disabled children.  20 U.S.C. § 1412(a)(1).  A FAPE can be provided via an IEP which

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291.  When reviewing an appeal from a state administrative decision under IDEA, federal district courts conduct a modified de novo review.  *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).  This means that district courts make their own findings by a preponderance of the evidence but also give "due weight" to findings in the administrative proceeding.  *Id.*  "Factual findings from the administrative proceedings are to be considered prima facie correct."  *Id.*  "If [the] reviewing court does not adhere to [those findings,] it is obliged to explain why."  *Id.* (citation omitted).  On appeal, we use plenary review over the District Court's legal conclusions, and we revew factual conclusions for clear error.  *K.D. ex rel. Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 254 (3d Cir. 2018).  We conclude that the District Court conducted appropriate review, and properly affirmed the denial of relief.

"meet[s] the unique needs of a child with a disability." 20 U.S.C. § 1401(29). IDEA emphasizes tailored instruction to progress through the education system, which "for most children . . . will involve integration in the regular classroom and individualized special education calculated to achieve advancement from grade to grade." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 401 (2017). To comply with IDEA, IEPs do not need to "maximize the potential" of a student with special needs. *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2009) (quoting *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000)). Rather, they must be "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *Id.* (quoting *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 729-30 (3d Cir. 2009)).

Appellants first contend that the District substantively violated IDEA when it "failed to consider the IEE, failed to amend Zachary's IEP, and failed to offer him a FAPE in response to the Family's IEE." Appellant Reply Br. 2. They correctly point out that federal regulations require the public agency to "consider" the results of an evaluation, even one obtained with private expenses. 34 C.F.R. § 300.502(c)(1). However, here, the District did consider the IEE and did offer Zachary a FAPE. As explained *supra*, although Parents gave the IEP team a copy of the IEE the day before the May 2017 annual IEP meeting, at the meeting the District and Parents discussed the IEE's recommendations, how the District could address some of the concerns, and ways in which other concerns were already being addressed by his IEP. Indeed, after the IEP team had time to review the IEE, the District proposed the July 2017 IEP – a modified

9

version of the May 2017 IEP, which added additional SDIs. "[An] IEP . . . need not necessarily provide 'the optimal level of services' that parents might desire." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010) (quoting *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 533-34 (3d Cir. 1995)). In any event, here, Parents were not denied participation rights, they were offered a FAPE, and indeed they "were intimately involved in the process of crafting [Zachary]'s IEP." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 275 (3d Cir. 2012).

In addition, Parents contend that the IEE was unfairly criticized in order to dispose of it. However, this misses the central issue, which is that retrospective review of an IEP must "appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Endrew F.*, 580 U.S. at 399. While there is no set test for IEP's generally, an IEP for a child in "regular classrooms . . . should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 204. Deference regarding an IEP's appropriateness "is based on the application of expertise and the exercise of judgment by school authorities." *Endrew F.*, 580 U.S. at 404. Dismissal of Dr. Schmidt's IEE is not a critique of its contents per se, but an exercise in demonstrating the reasonableness with which the District acted. There is no indication that the IEP was not meeting the above standards. Moreover, the District does not bear the "burden of proving the inappropriateness of any alternative IEP that a student's parents might suggest." *Carlisle*, 62 F.3d at 533 (emph. omitted); *see Mr. P. v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 753 (2d Cir. 2018) ("While the IDEA required

the District to consider this neuropsychological report, the District was not required to implement Dr. Isenberg's suggestions.").

Parents also argue that grades here "are not proof that Zachary made meaningful educational progress with respect to his emotional and mental health needs." Appellant Reply Br. 8. While they are correct that grade advancement alone does not inherently fulfill the requirements of a FAPE, the "personalized instruction with sufficient support services" provided must "meet the State's educational standards, must approximate the grade levels used in the State's education, and must comport with the child's IEP." *Rowley*, 458 U.S. at 189. The IEP must provide "special education" which is "specially designed instruction . . . to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29). There is no bright-line rule in determining whether those needs are met, as the "adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." *Endrew F.*, 580 U.S. at 404. There is every indication that by utilizing multiple tools and programs, and by giving Zachary personalized instruction, the District was exercising the proper judgment in implementing Zachary's IEPs. "[S]o long as the IEP responds to the [student's] needs, its ultimate success or failure cannot retroactively render it inappropriate." *Carlisle*, 62 F.3d at 534.

Grades are nonetheless important in further assessing the success of an IEP. "When . . . a child is being educated in the regular classrooms of a public school system, the system itself monitors the educational progress of the child. . . . The grading and advancement system thus constitutes an important factor in determining educational benefit." *Rowley*, 458 U.S. at 203. While progression through the system alone does not

11

automatically constitute a FAPE, the "essential function of an IEP is to set out a plan for pursuing academic and functional advancement." *Endrew F.*, 580 U.S. at 399. "A substantive standard not focused on student progress would do little to remedy the . . . academic stagnation that prompted Congress to act." *Id.* at 400. Thus, given Zachary's grade advancement, appellants would need to otherwise demonstrate how the IEPs did not meet the reasonable calculation standard. The lack of a clear test has more to do with how no law could promise any particular educational outcome, not a presumption that grade advancement is an inherently insufficient metric.

Parents assert that "[Zachary's] grades do not show evidence that he received a FAPE with respect to said needs." Appellant Reply Br. 12. While grade advancement does not automatically suffice as a FAPE, it is nonetheless the case that said progress weighs in that direction. Additionally, the July 2017 IEP largely reflected the previously accepted IEPs, with additional SDIs regarding social and executive functioning. It is insufficient for Parents to assert that Zachary had unmet needs, as those needs would need to (1) go unaddressed by the July 2017 IEP, and (2) more importantly, inhibit Zachary from making a reasonable level of progress. Neither of those are the case here. The District Court properly found the District did not commit a substantive violation of IDEA.

## B. Whether the District Violated Section 504

Section 504 requires recipients of federal funds to "provide a [FAPE] to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the

12

nature or severity of the person's handicap." 34 C.F.R. § 104.33(a). It "protects the rights of disabled children by prohibiting discrimination against students on the basis of disability, and it has child find, evaluation, and FAPE requirements, like the IDEA." *P.P. ex rel. Michael P.*, 585 F.3d at 735. "To establish a § 504 violation, 'a plaintiff need not prove that defendants' discrimination was intentional.'" *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 246 (3d Cir. 1999)).

Parents contend that Section 504 violations may occur independently of IDEA violations, and absent deliberate intent. However, they have failed to show how the FAPE provided to Zachary would uniquely violate Section 504 but not IDEA. Moreover, Parents argue that they "need only provide the unintentional *denial of a FAPE*" in support of their Section 504 claim. Appellant Br. 50 (emph. added). Here, as explained above, the District Court properly found that the District did not deny a FAPE, Parents do not otherwise show how Section 504 was violated, and the District Court correctly denied Parents' Section 504 claims.

Accordingly, we affirm.

13